**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 24 2001**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY;
UNION PACIFIC RAILROAD
COMPANY,

     Plaintiffs - Appellees,

  and

UNITED STATES OF AMERICA,

     Plaintiff-Intervenor - Appellee,

vs.

R.M. "JOHNNIE" BURTON, in her
official capacity as Director, Wyoming
Department of Revenue,

     Defendant - Appellant.

Nos. 00-8087 and 00-8088

---

BURLINGTON NORTHERN AND
SANTA FE RAILWAY COMPANY;
UNION PACIFIC RAILROAD
COMPANY,

     Plaintiffs - Appellees,

  and

UNITED STATES OF AMERICA,

     Plaintiff-Intervenor - Appellee,

vs.

SLEETER DOVER, in his official capacity as Director of the Wyoming Department of Transportation,

     Defendant - Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. Nos. 00-CV-108-J and 00-CV-109-J)

---

Submitted on the briefs:[*]

James W. McBride and Anne M. Stolee, Baker, Donelson, Bearman & Caldwell, Washington, D.C. and W. Perry Dray, Dray, Thompson & Dyekman, P.C., Cheyenne, Wyoming, for Plaintiffs - Appellees.

Stuart E. Schiffer, Acting Assistant Attorney General, David D. Freudenthal, United States Attorney, Mark B. Stern and Stephanie R. Marcus, Department of Justice, Washington, D.C., for Plaintiff-Intervenor - Appellee.

Gay Woodhouse, Attorney General, Vicci M. Colgan, Chief Deputy Attorney General, Michael Dinnerstein and Harold E. Meier, Cheyenne,Wyoming, for Defendants - Appellants.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1 (G). The cause therefore is ordered submitted without oral argument.

Before, KELLY, Circuit Judge, MCKAY, Senior Circuit Judge, and BROWN, Senior District Judge.**

KELLY, Circuit Judge.

Defendants-Appellants R.M. "Johnnie" Burton, Director, Wyoming Department of Revenue, and Sleeter Dover, Director, Wyoming Department of Transportation, ("the State") appeal from the district court's order denying their motions to dismiss. We have jurisdiction over these interlocutory appeals pursuant to 28 U.S.C. § 1291 and the collateral order doctrine. Innes v. Kan. State Univ., 184 F.3d 1275, 1277 (10th Cir. 1999)(citing Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 147 (1993)(holding that states may take advantage of the collateral order doctrine to appeal district court orders denying claims of Eleventh Amendment immunity)).

Because "we are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court," United States v. Morris, 247 F.3d 1080, 1085 (10th Cir. 2001)(quoting In re Smith, 10 F.3d 723, 724 (10th Cir. 1993)), we find Union Pacific Railroad Co. v. Utah, 198 F.3d 1201 (10th Cir. 1999) to be controlling and affirm the district court's order

---

**The Honorable Wesley E. Brown, Sr., Senior District Judge, United States District Court - District of Kansas, sitting by designation.

denying the motions to dismiss.

Background

Plaintiffs-Appellees Burlington Northern and Santa Fe Railway Company and Union Pacific Railroad Co. ("the Railroads") filed two separate complaints challenging the imposition by the State of Wyoming, through Ms. Burton, of a tax on the transportation of coal (No. 00-8087) and, through Mr. Dover, of a tax on railroad train miles and grade crossings (No. 00-8088).[1]  Wyo. Stat. Ann. § 39-21-103 (Michie 2001)(coal transportation tax); Wyo. Stat. Ann. § 39-20-104 (Michie 2001)(train mile tax).  The Railroads based their challenge on Section 306 of the Railroad Revitalization and Regulatory Reform Act of 1976 ("the 4-R Act").  See 49 U.S.C. § 11501.  The 4-R Act prohibits states from discriminating by more than 5% in taxing rail transportation property and rail carriers.  It also gives federal courts concurrent jurisdiction to hear 4-R Act cases and power to grant injunctive relief.  The State moved to dismiss the complaints for lack of  subject matter jurisdiction claiming that the 4-R Act is an invalid attempt by Congress to abrogate state sovereign immunity under the Eleventh Amendment.  The State argues that this court's precedent in Union Pacific Railroad Co. v. Utah, 198 F.3d 1201 (10th Cir. 1999), is not controlling because of changes made in Eleventh

---

[1]Because of the similarity of facts and common question of law, we will consolidate the two appeals together in this order and judgement.

Amendment jurisprudence by the United States Supreme Court in its subsequent cases Kimel v. Florida Board of Regents, 528 U.S. 62 (2000), and Univ. of Alabama v. Garrett, 531 U.S. 356, 121 S. Ct. 955 (2001). We review the denial of a state's claim of Eleventh Amendment immunity from suit in federal court de novo. Innes v. Kansas State Univ., 184 F.3d 1275, 1277 (10th Cir. 1999).

Discussion

In Union Pacific Railroad Co. v. Utah, 198 F.3d 1201 (10th Cir. 1999), the Union Pacific Railroad Company and the Utah Railway Company both sought relief against the State of Utah from an allegedly discriminatory property tax under the 4-R Act. The State moved to dismiss on the basis of Eleventh Amendment immunity and the district court granted the motion. The plaintiffs appealed and this court reversed the dismissal holding that the 4-R Act was a valid abrogation of Eleventh Amendment immunity. In reaching its decision in Union Pacific, this court relied on Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996), City of Boerne v. Flores, 521 U.S. 507 (1997), and Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank, 527 U.S. 627 (1999). Subsequent to the issuance of Union Pacific, the Supreme Court decided Kimel v. Florida Board of Regents, 528 U.S. 62 (2000), and Univ. of Alabama v. Garrett, 531 U.S. 356, 121 S. Ct. 955 (2001). Unless the Supreme Court has changed the

appropriate test for determining what is a valid abrogation of Eleventh

Amendment immunity in Kimel or Garrett, Union Pacific is controlling precedent

and the denial of the motions to dismiss must be affirmed. See United States v.

Morris, 247 F.3d 1080, 1085 (10th Cir. 2001)(quoting In re Smith, 10 F.3d 723,

724 (10th Cir. 1993)).

First, relying on Florida Prepaid, this court reiterated in Union Pacific that

Congress must make an "unmistakably clear expression of congressional intent to

abrogate state immunity," Union Pacific, 198 F.3d at 1206, and found that

Congress had done so in the language of the 4-R Act. Id. at 1205-06. Kimel and

Garrett applied this same standard. See Kimel, 528 U.S. at 73; Garrett, 531 U.S.

at __, 121 S. Ct. at 962. In this action, neither party has argued that Congress did

not express its intention to abrogate state immunity.

Second, relying on Seminole Tribe, this court noted that "Congress may

only abrogate state immunity when it acts pursuant to the legislative authority

granted to it by section 5 of the Fourteenth Amendment." Union Pacific, 198 F.3d

at 1203. Pointing out that the Supreme Court had "left undisturbed the principle

that congressional action may be upheld under § 5 even when Congress does not

expressly rely on that provision as the source of its abrogation power," this court

concluded that the 4-R Act was a valid exercise of congressional authority

pursuant to § 5 of the Fourteenth Amendment despite Congress' failure to

expressly rely on it. <u>Id.</u> at 1203-04. In this action, the State argues that the 4-R Act is not a valid abrogation of sovereign immunity because it was enacted pursuant to Article I's Commerce Clause and not expressly pursuant to section 5. Aplt. Br. at 5. While <u>Kimel</u> and <u>Garrett</u> do reaffirm that Congress only has the power to abrogate under the Fourteenth Amendment and does not have the power under Article I, neither <u>Kimel</u> nor <u>Garrett</u> require that Congress expressly rely on section 5. <u>Kimel</u>, 528 U.S. at 78-82; <u>Garret</u>, 531 U.S. at __, 121 S. Ct. at 961-63. This court's conclusion that the 4-R Act was a valid exercise of Congress' power to enforce the Equal Protection Clause is not, therefore, called into question by Congress's failure to rely expressly on the Fourteenth Amendment. <u>Union Pacific</u>, 198 F.3d at 1208.

Third, relying on <u>City of Boerne</u>, this court stated that "congressional power under § 5 is remedial in nature, and confers the authority to enforce the Fourteenth Amendment rather than to define its parameters as a matter of substantive law" and that the Supreme Court has established several factors to guide us in determining whether a law enforces or defines. <u>Id.</u> at 1204. These factors include: (1) whether the legislative record before Congress indicates that the congressional action taken was necessary and appropriate, (2) whether Congress identified conduct transgressing the Fourteenth Amendment's substantive provision, and (3) whether the remedy is proportional and congruent

to the unconstitutional conduct it was enacted to curtail.  Id. at 1204-05 (citing

City of Boerne and Florida Prepaid).  Our "review of the legislative history

convince[d the court] that in passing the 4-R Act, Congress was responding to

evidence of a pattern of unconstitutional taxation," id. at 1206, and "a substantial

history of state discrimination in the taxation of railroad property." Id. at 1207.

This court held that the state conduct identified by Congress was unconstitutional

because it violated the Equal Protection Clause.  Id. at 1208 (citing Metro Life

Ins. Co. v. Ward, 470 U.S. 869 (1985)).  Taking into consideration that only

injunctive relief is available and the 5% threshold, we held that the remedy is

"congruent with and in proportion to the Equal Protection violation."  Id. at 1208.

In this action, the State argues that the R-4 Act is not a valid abrogation of

sovereign immunity because it redefines rather than enforces the Fourteenth

Amendment.  Aplt. Br. at 6.  In support of this assertion, the State claims that in

Kimel the Supreme Court identified two new factors for determining if a statute

permissibly enforces or impermissibly defines the Fourteenth Amendment.  Aplt.

Br. at 4.  These factors are: whether the legislation prohibits substantially more

practices than the Fourteenth Amendment does, and whether the history of the

legislation reflects a pattern of activity by the states that violates the Fourteenth

Amendment.  Id.

As to the substantially more practices factor, the State claims that the R-4

Act prohibits all discrimination against railroads while the Equal Protection Clause either does not prohibit discrimination or prohibits only irrational discrimination. Aplt. Br. at 11. Assuming for the sake of argument that the Supreme Court did establish a new "substantially more practices" factor for consideration in Kimel,[2] it does not follow that the State would then prevail. First, the State has overlooked the fact that the R-4 Act prohibits only discrimination that rises above the 5% threshold. 48 U.S.C. § 11501(c). Second, this court in Union Pacific already established that discriminatory taxation of railroads violates the Equal Protection Clause. Union Pacific, 198 F.3d at 1206-08. Third, even if the R-4 Act does prohibit some rational discrimination against railroads which the Equal Protection Clause might not prohibit, the Supreme Court has "never held that § 5 precludes Congress from enacting reasonably prophylactic legislation." Kimel, 528 U.S. at 88.

> Congress is not limited to mere legislative repetition of this Court's constitutional jurisprudence. "Rather, Congress' power 'to enforce' the

---

[2]This seems unlikely because, in Kimel, the Supreme Court describes its decisions in City of Boerne and Florida Prepaid with approval and states that it is applying the same test for congruence and proportionality. Kimel, 528 U.S. at 80-83. Likewise, Garrett quoted City of Boerne when it stated "§ 5 legislation reaching beyond the scope of § 1's actual guarantees must exhibit 'congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'" Garrett, 531 U.S. at __, 121 S. Ct. at 963. Given these statements by the Supreme Court, this court is inclined to agree with the Railroads' suggestion that "substantially more practices" is merely a new descriptive phrase. Aplee. Br. at 13.

Amendment includes the authority both to remedy and to deter violation of rights guaranteed thereunder by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text."

Garrett, 531 U.S. at __, 121 S. Ct. at 963 (quoting Kimel, 528 U.S. at 81). Finally, it is clear that this alleged "substantially more practices" factor is not determinative. Kimel, 528 U.S. at 88 ("That the ADEA prohibits very little conduct to be held unconstitutional, while significant, does not alone provide the answer to our § 5 inquiry."); id. at 91. It is merely another factor to be considered along with other factors.

As to whether the history of the legislation reflects a pattern of activity by the states that violates the Fourteenth Amendment, this factor was also addressed in Union Pacific. This court's "review of the legislative history convince[d the court] that in passing the 4-R Act, Congress was responding to evidence of a pattern of unconstitutional taxation," Union Pacific, 198 F.3d at 1207, and "a substantial history of state discrimination in the taxation of railroad property." Id. at 1206. Although the State repeatedly cites to the congressional record, we reviewed that record in Union Pacific. As stated above, we cannot overrule the judgement of another panel of this court absent en banc reconsideration or a superseding contrary decision by the Supreme Court. United States v. Morris, 247 F.3d 1080, 1085 (10th Cir. 2001) (quoting In re Smith, 10 F.3d 723, 724 (10th Cir. 1993)). Because we hold that Union Pacific survives Kimel and

- 10 -

Garrett, no further review of the congressional record is necessary. See Kimel, 528 U.S. at 89; Garrett, 531 U.S. at \_\_, 121 S. Ct. at 967.

In sum, we conclude that the Supreme Court's recent decisions did not contradict Union Pacific, it remains controlling precedent, and the 4-R Act is a valid congressional abrogation of state immunity. We, therefore, AFFIRM the district court's denial of the motions to dismiss but express no opinion on the merits of the Railroads' claims.